The Honorable Judges of the United States Court of Appeals for the Fourth Circuit. All right, please be seated. And we'll take up our next case, E.R.L. v. Adoption Advocacy, Inc. Mr. Butcher. Thank you, Your Honor. May it please the Court. Present today with me is my partner, Deborah Butcher. Watching today are my clients online. First, I want to start with the procedural history because a lot of the opposing counsel's briefs just misstate what was factually in the complaint or what actually happened in this case. When we filed, we didn't know who the adoption workers were. And the original complaint lists an adoption specialist, an adoption specialist supervisor. And the allegations, our belief was they worked for DSS. And then afterwards, after we filed, we asked for an ex parte motion to conduct limited discovery under Rule 16, Rule 26. The Court granted that and allowed us to send a subpoena for records. And from there, we have our complaint. And that's, although it's not in the records, we sued the people who were the adoption specialists. I want to make sure I'm on the same page as you here. So you send a subpoena to the South Carolina Department of Social Services, is that right? Yes, Your Honor. And then say who were the adoption specialists on this case, and they point to two people who work for the adoption agency. Yes, Your Honor. Okay. Yes, and so if you look at Docket 7, 8, 9, 10, afterwards, you'll see, and you'll see the filing of the correspondence regarding the subpoena and that type of stuff. So under Rule 12b, when you're looking at all evidence in the complaint and that type of stuff, you can also take inferences, we believe, from the record regarding who the parties were. And the reason why that's important is in adoption advocacy's defenses for res judicata, they constantly state that the person in court who was making reports regarding the adoption was a state actor. The only person that was making reports under the complaint and who made reports and investigations, if they were a state actor, the only person was adoption advocacy and its employees. So from that perspective, we believe that that is an admission. But going on from there, I mean, bottom line, we know that ERL was a minor. She was incompetent. She's a permanent ward of the state of Ohio. She had no ability, no free will to protect herself, to determine where she was going to go. She was entirely dependent on the state of Ohio on her placement. Ohio sold that responsibility to adoption advocacy. Is that the allegation? I'm not sure it really matters for your state action argument, but I was a little bit confused, and it may just be because there hasn't been discovery yet about sort of which way the contractual relationships ran. But the allegation in the complaint is that it's the state of Ohio or the county in Ohio that contracted with the agency, not the state of South Carolina? That's correct. I'm not sure it matters. It's a state either way. Well, the appellees say it was the state of South Carolina, and that could be true because guess what? We don't have a contract. But within the four corners of our complaint, that's our allegation. And to me, it only made sense because I'm looking at the ICPC, Interstate Agreement on the Placement of Children. So did your discovery request go to the motion for summary judgment or the motion to dismiss? My discovery request. So you're talking about the motion to conduct an initial discovery. That was immediately after filing the complaint because we filed against two John Does, adoption specialist and adoption specialist supervisor. Well, I thought one of your arguments was that there was error because there was no discovery allowed. Right. So we weren't complaining about that discovery because we found out there were no DSS employees and they didn't have any files or records regarding their employees doing anything with the adoption. Our concern was when the court is supposed to look into a deeper dive into state action and we don't have a copy of the contract with adoption advocacy. We don't know anything about what happened between. But I'm going back to the question of does it go to the motion to dismiss or the motion for summary judgment because there would have to be differing legal authority for each one. Correct. And the court granted a motion to dismiss. Yes, sir. Not the summary judgment. Correct. Well, it was framed by the appellees as a motion to dismiss or the alternative for summary judgment. But it was in the initial pleading stage. They never answered. And so we never got past there. Is there an order of the district court denying you the discovery? I couldn't understand what you were appealing, I'm going to be honest, as to discovery. I totally understand your argument about state action. But what is it you are appealing? It looked to me like, as you say, you wanted this very preliminary discovery, the subpoena, which you got. What was it? What thing? Well, the next was to at least send some production for the basic file from adoption advocacy and send a subpoena to Franklin County Children's Services. And the district court denied that? It denied that, Your Honor. And, of course, if this were dealing with adoption and foster care, any other venue a litigant would be able to get records. But everything is sealed. What's the authority to get discovery on the motion to dismiss? Well, the authority, what I would say is that the court should view as to whether or not there are enough facts to be ruled upon. And in a case like this, we have plenty of facts, but what we don't have are extremely dispositive facts of who was doing what to Franklin County and adoption advocacy. As I understand what the district court did and what you pled, the district court said it was going to grant the motion to dismiss because your allegations do not plausibly allege that defendants are state actors because foster care is traditionally the exclusive function of the state. So that goes to the question of what are the methods of determining a state actor? And there's, I think, fair to say some confusion in their cases as to whether the exclusive public function theory is all there is or whether there's a separate delegation of a constitutional duty theory, which you may have pled on somewhere in your complaint because I know I saw it. Yes, sir. But you didn't plead anything on the exclusive function theory. So you have to be going on the other one. Now, as far as I understand, excluding pleading an exclusive function theory isn't necessarily a pleading requirement for 1983. I think that's an isn't that an argument under that you can make regarding 12 B 6 or it's it's not. I don't think is a required element to get me through the door, even under the heightened pleading requirements that the Supreme Court has created for a lot of these cases. I don't think I have to say, you know, so and so violated my civil rights under color of law. And also, you know, they they are. I don't think I have to plead that specific theory. Well, why don't can you maybe just say what is your theory of state action in this case? My theory of state action is that they the it is the intertwinement. It is the actual specific delegation of the the placement of this child and supervision that that is. So those are two different things. There's intertwining. I mean, not to get all technical about it, but but one of your arguments, as I understood it, was this delegation theory, this West versus Atkins theory that look at the state has custody of someone and has an affirmative constitutional obligation not to do something like make a placement in deliberate indifference. Yes. And you could sue the state for doing that. The state doesn't get out of that by saying, well, instead of doing it ourselves, we hired this person to do it. I mean, I thought that was basically your argument. Yes, that's that. That is basically my. Yes, your honor. I mean, there is also some I understand you also talk about the regulations and this is all very tightly regulated, which, you know, not probably not enough by itself, but the intertwining. Right. And I think those regulations are more evidence of rather than it's not going to create it. You know, and I think the other thing is not to belabor this foot is is paragraph 41 of your complaint, which is on J.A. 17. Is that the crux of your state actor argument? Because if there's something else in there now would be a good time for you to tell us. I at this point, but I during hopefully during my rebuttal, I can give you better direction on that. Let me ask it this way. Yes. Paragraph 41. An allegation in your view that there was a constitutional duty and that that duty was allocated, contracted, transferred to the defendant adoption advocacy. Yes, your honor. Yes, your honor. And that was the other reason why some at least limited discovery regarding adoption advocacy was. What does Franklin County's contract say when they are sending these kids and having these contractors assume these duties? Does it say you're going you're going to be 100 percent responsible for any any harms constitutional and constitutional? Those types of things. But you would agree. I take it that for 1983 purposes that you have to begin by pleading that adoption agency is a state actor. Yes, your honor. And I believe that I plug that in the first cause of action. And I believe that we show through the facts in there that they did all of the actions that a state actor would, such as Debbie Thompson did in the Doe, Doe, X, well, Johnson case that that we rely on as our as a basis for that. Yes, your honor. Well, before your time runs out, why don't we move on and assume that there's an adequate pleading that the defendants are state actors? They say they're entitled to qualified immunity. What's your response to that? Absolutely not. Because they were told on, was it March 5th or March 10th, 2010, by the 4th Circuit that if you're a provider, I mean, if you're all. If you violate a child's substantive due process rights, then you have all then you're liable under 1983. Is that the date of the Doe case? That is the date of the Doe case. Anything else before you sit down? No, your honor. If you would just do me a minor favor. Yes, ma'am. When you come back for rebuttal, just where in the J.A. do I find this discovery order by the district court that you appeal? I didn't include it in the J.A. It's in the. But you're appealing it. It's in the. You can tell us when you come back. It's in the docket. Yes. All right. Mr. Parker. Thank you, your honor. May it please the court. Chase Parker for Adoption Advocacy, June Bond and Joe Haines. And your honors, I want to turn to the initial point of the discovery. Like the court mentioned, the discovery order is not in the joint appendix. So I'm not sure procedurally how the court can go and rule on something that's not been entered into the record in terms of how the discovery order affects a prepleading ex parte discovery request that did not involve my clients, that was supposedly served to the South Carolina Department of Social Services, that would somehow get Franklin County's contract with my clients. I'm unsure of how to handle that. All I know is that the rules explicitly limit pre-suit discovery to preservation situations. And nowhere in the record do we have any sort of evidence showing that this was some sort of vanishing evidence or something that couldn't be brought up post-complaint filing. Is your argument that irregardless of the factual underpinning, they don't get discovery on the motion to dismiss? That's correct, your honor. And your honor, if alternatively we go to the summary judgment portion of the motion, all those things are based upon things that were attached to the complaint by the petitioners. And I'll get to that at the end, but essentially the basis for the summary judgment motion and for the estoppel arguments is that the adoption decree for these children was attached and essentially laid out the statutory investigations that were done by the court and the findings by clear and convincing evidence by the family court in Beaufort County. So that's what the estoppel argument is based upon, but I think the primary question the court has today is about the state action issues. And the court is correct in that there's a multitude of different formulations of how the court can go and discuss state action, especially when it relates to private contractors that work with the government. We have the nexus test, the public function test, and it's been put out in a factorial number of ways. But I think the court really has two ways to look at it. We have essentially the public function test, which we've discussed, and we briefed before the district court. The district court found that the care of parentless children, whether they are war children or relinquished children or consented adopted children, essentially has never been the exclusive prerogative of South Carolina state government. The district court said that the plaintiff didn't plead that in any event. Correct. Is that your understanding? That's my understanding as well, Your Honor, yes. And to go to the complaint, the factual allegations of the complaint are that our clients are private adoption placement agencies that had some form of contract. It's not explicitly said within the complaint that they had some sort or they assumed some duty that would forever, you know, endure them to the benefit of the plaintiffs that they would have to watch them no matter who they were placed with. I thought the complaint pretty clearly alleged that under DOE, right, the state at least, as to children in its custody who have no other form of protection or no choice about where they're going, owes them a duty not to make a placement in deliberate indifference of a risk to the child's health and safety, and that here, that obligation, the placement obligation was contracted out to these employees of the adoption agency and that under the West line of cases, that is enough to make them state actors at least for purposes of a 1983 action alleging that they violated that duty to make the placement without deliberate indifference. And I read the allegations the same, Your Honor. Okay, well, why is that wrong? That seems pretty straightforward. The second portion of the test that I wanted to discuss is this delegation or this special relationship doctrine that's espoused in DOE. And so what DOE essentially says is that when the state either does... If I can get you to consider your answer to this, I don't read the district court's decision as having addressed a constitutional, the delegation of a constitutional duty. Do you agree? I would agree with that, Your Honor, yes. So if they've alleged that in paragraph 41 and the district court did not address it, wouldn't we at a minimum have the district court address that specific claim? Your Honors, could remain the case and have it addressed by the district court, but I also believe that the federal rules allow this court to affirm a order that has entered to my client's benefit and under a de novo standard of review make that determination themselves without remaining it back as long as it was brought before the district court. Otherwise, we would have to file... Just here, though, on the complaint, and the complaint has made an allegation that arguably we can assume for purposes of argument that states a proper basis under 1983 for a state actor. The delegation of a constitutional duty. So that was raised. It's before the district court. The district court didn't rule on it. How are we authorized to proceed to rule on that on the merits, particularly in favor of your client, when we're in this posture? Sure, Your Honor. And the second part that I was going to discuss before your Honor's question is a purely legal question that can be contained within the four corners of the complaint, and that's the special relationship doctrine. And when we go and we look at West and Joe Exrell v. Johnson, essentially what the court is saying in the Supreme Court and this circuit is that when there is a custodial relationship, and by that a physical contained custodial relationship with a ward of the state, an institutionalized person, then that duty arises to comply with the 14th Amendment. Here, however, we're talking about a case that this court has actually treated before when we're talking about whether it be Department of Social Services placing a child with a family member who is not the custodial family member, a grandparent, an aunt, or many of those. That's the Milburn case, Welburn I believe as well. Essentially, this court has already ruled that when a person is placed with even a non-custodial family member, they're not in state custody. Right, and that's why I think this case would be very different if the focus were on the harm, the grievous harm done to this little girl after she was placed with the family. But to the extent the complaint has alleged, the problem is with the placement. That's what puts us, I think, pretty squarely under dough. I don't really see a way around that. Sure you are, and I believe that there is. So when we look through the Child Welfare Act or Chapter 9 of the South Carolina Code, it's very clear that South Carolina distinguishes between a foster home and a private adoptive placement. So if we go into dough, it says explicitly in dough that the duty to protect a war child begins because they are placed within a state-sponsored or a state-certified foster home. That's not what it says. It says that the duty springs from the fact that the child is helpless and in the state's custody. There is no one to protect the child except for the state. That's what gets you out from under Ducheney and triggers the duty. I cannot read that opinion as turning on whether the anticipated placement will be for foster care or adoptive care. It's about the relationship between a helpless child who is in the custody of the state and the state's duty to protect that child. I understand your Honor's position, and respectfully, we disagree. We think that it's analogous to placing with a non-custodial family member, which the court has held time and time again for 40 years, that that does not give that 14th Amendment protection. The claim raised here is a constitutional claim, not a statutory claim. It may have a statutory claim, but as I understand it, they've raised a constitutional claim. A statutory defense, I'm not sure, would be a constitutional defense, would it? I may not be understanding your Honor's question. I suppose the statutory defense is because the state-custodial relationship comes from physical constrainment of the child. Obviously, the child doesn't have a decision whether she gets placed with a family member or whether she gets placed in kinship care or whether she gets placed in a state foster home. But like I said, DOE uses the specific words, a state-certified foster home, and when we look to the South Carolina regulations, there's a distinct statutory difference between the two. And I think your Honor is right that there are remedies through, and they may be limited. Is your position that, in terms of a state actor analysis, that foster child placement cannot, as a matter of law, entail a constitutional duty? No, your Honor, it's not that foster care cannot, it's that Foster care placement. Well, there's a distinction between adoptive placement with a private family and placement with a state-sponsored and state-licensed foster home or foster unit. And that's where we get to the custodial distinction is that, like I said, often children who are relinquished or have family members consent to their adoption or placement in foster care, we go in and you see that the duties that the statute in South Carolina give is that when a child is placed within an adoptive family, and it uses that term specifically, adoptive family, not a foster family, when they're placed with an adoptive family, the DSS cannot go and retrieve that child from an adoptive placement without going to a family court and petitioning for a removal back into their custody. So I think the statutory scheme lays out what South Carolina law intends when they have a distinction between foster care and private adoptive placement. And the complaint, the real factual deficiency in the complaint is that there is no allegation that the Mitchells, the family that were eventually convicted, ever were paid by the state of South Carolina. They're not saying that the Mitchells were state actors. This is why I'm so perplexed by all of this. We do have cases saying that foster parents are not themselves state actors. But that's not why would they have to allege anything about the Mitchells. They're not alleging that they're state actors. They are alleging that it was the part where the state placed the child, but the placement decision itself that ran afoul of Doe and the fact that it was done not by someone who gets their paycheck from the state, but by someone who the state subcontracted out to doesn't make any difference under West. I understand the distinction the court is making, but really the harm occurs after the placement decision is made. And so, I mean, I know it shows the difficulty of line drawing. That's exactly what Doe is about because Doe was decided in the face of a bunch of cases saying that that harm that occurs after the placement, that may not be state action. So Doe very specifically said, we're talking about something different. These are two separate things. We're talking about the placement decision, and the placement decision itself is governed by the 14th Amendment. Notwithstanding DeShaney, you have a 14th Amendment duty to these kids when you place them. We may not be able to help them after that, but we're focused in on the placement decision itself. That's what we're talking about, and they allege in their complaint that it was the placement decision that caused the harm. And I understand Your Honor's point, and we disagree and think that the custody and harm occurs after the placement and that there is no custody that immerses Franklin County. That takes me back to the question I thought I asked earlier. Is it your position that there simply is no constitutional duty in foster placement? Again, I would draw the distinction between foster and adopted, but our position is that in a private family that is not licensed by the State of South Carolina, there is no constitutional duty or protections from private harm, and that's something that the Supreme Court has instructed us for. But what's the private harm? I mean, that's just, I think we all agree there's no constitutional protection from private harm. So can you, without sort of, you understand like, that's not satisfying to me because you simply restated the question. I understand, and I don't mean to be question begging. No, no, I'm asking you to be specific. Sure, and the harm that I'm discussing is the actual abuse allegations, is that the harm and reporting that comes after the placement, anything after that and after the actual adoption when the legal connection between any of these states is cut. How is any of that relevant here? This is all leading up to that point. The allegation is, which may be insufficient, it may not be factually provable, but the allegation, just for purposes of state actor pleading, is the placement in and of itself entails a constitutional duty, and that duty was delegated to your client. That's all we're doing up to this point because it's on a motion to dismiss. Why is that insufficient in and of itself? Whatever happens when they're in foster care or they're adopted, that's not really relevant to this question. I suppose I'm trying to find the connection between the injuries that occur and linking it to the placement because I see them as two different timelines. But I suppose the only response I have is that the allegation is a matter of law and there's not facts that go into it. I mean, if we were talking about perhaps the contract, we supposedly said you will indemnify, you will hold harmless every single person within the Department of Child Services, and that obviously goes to the discovery issues we were just talking about. But those aren't factual allegations that are made in the complaint. It just is a conclusion that there is a legal duty here, and if the court decides that there is one, then it would be a sufficient complaint allegation. But in our view, it's a legal conclusion that is putting the framework for the factual allegations that come after. I mean, I think that's right. This is a motion to dismiss, and there has been no meaningful discovery, and I think it is certainly an open question whether any of these allegations sort of bear out after discovery and on summary judgment. But just as alleged, I guess I don't hear you saying that if it is sort of properly alleged that there is this duty and that it was delegated out, that that would not suffice to state a state action. Correct, Your Honor. So our position is that they have pleaded that that is the case, but I think as a matter of pure law, this court has to determine whether that duty exists in this particular scenario in that we have an interstate placed child who goes to a private adoption agency placed by whomever, whether it be Franklin County or the South Carolina Department of Social Services, and then it's placed again in the care of private individuals that are not, as I said, not state foster actors, so to speak. I mean, we think that that cuts the custodial relationship that Doe discusses, and this court hasn't made that distinction and hasn't narrowed that focus from Doe to discuss whether placement from basically three levels of Department of Social Services to a private adoption agency to a private family, if that duty maintains all the way through. But they don't, they're not saying it goes all the way through to the Mitchells. They're just saying it goes one step from the state to the worker that the state contracted with to do what would otherwise be done by state employees. We're only talking about the one level, I think. I mean, I don't read the complaint as alleging that the Mitchells are state actors, but maybe you read it differently. Well, they're alleging that the harm that the Mitchells. That's sort of a question of damages. If you can prove that the placement was made with deliberate indifference, then you have a damages question, but I don't think that turns on anybody's state actor status. Sure, and for us, the placement still is placing them into a non-state custody. That's essentially our argument. When we talk about West and Atkins, we're talking about someone who is physically within the prison system and has a doctor come in and come and look at them. They have not been removed from state custody physically within a state institution, and DOE uses that term quite often in a state institution, custodial institution. So I think the physical custody is of primary importance when we're talking about when the duty. So if we assume, which aren't the facts in this case, that the state of Ohio placed the child directly in this case, would the state of Ohio then be discharging a constitutional duty in its placement of the child? In South Carolina, we think no, Your Honor, because they are placing them with a private family member, or excuse me, a non-state custodial. Right, but wouldn't the constitutional duty, since it's a federal constitutional duty, be uniform? How could it vary from state to state? Sure, Your Honor, and so because we're talking about acting under, well, I'm conflating private 1983 claims with those of Monell and state governmental actors, so I apologize. But when we're looking through the acting under cover of law, and we look to the previous precedent, as Your Honors have noted, there is no private cause of action for purely private harm, and so what we're saying is that the placement with a private family doesn't confer that duty of protection. So your understanding is that notwithstanding Doe, South Carolina is free constitutionally, South Carolina, their own employees, to place children who are in their custody, in their sole legal custody, custody, have no other form of protection in the world, they are free constitutionally to place those children with people they know will abuse them in deliberate indifference to that risk, because once they are placed, those people are private. So you think Doe does not prohibit that? Assuming the facts of the complaint state that. I'm just asking you a hypothetical. Is your position that the state of Carolina does not have a constitutional duty to the children in its sole and exclusive custody, not to knowingly place them with private parties who will abuse them? That's correct, Your Honor, and this court has held that before in the Milburn case. That is not what the court held in Milburn. That is nothing close to what the court held in Milburn. Well, Your Honor, those children in those cases were removed and then placed with a familial member, I believe a grandparent, and then the court held that. The question was whether the grandparents were state actors so that the state could be sued for the harm that ensued after the placement. The question in that case was not about the placement. The placement question came up squarely for the first time in Doe when I understood this court to say very, very clearly that states have a constitutional obligation to the children in their care and custody not to place them with known monsters who will abuse them. So if you could jump up, because we've taken you over a little bit, so if you could go ahead and bring your arguments to a close. Sure, Your Honor. So we would just be asking the court to hold as a matter of law that private adoption agencies who received children in interstate compact placements do not have a constitutional duty to protect and investigate, as is alleged in the complaint under 1983. And just very briefly, Your Honor, just so I could have it on the record, we would also assert a qualified immunity defense if the court were to find state action here. The Filarski case is a relatively recent Supreme Court case that discusses the ability of qualified immunity to enter to the benefit of private parties who do public function or contractual duties for the state. We can rest on a brief for the remainder of that, but I would ask the court to consider that as well. Thank you. All right. Thank you very much. Mr. Butcher, you've got some rebuttal time. Yes, sir. Just thinking about what you asked me earlier, Your Honor, regarding in the complaint, I really don't think and I can't envision trying to, and I know I plead a lot in that complaint, but trying to plead out all these additional issues with state action. I think we sufficiently allege that they were state actors and that Franklin County asked the adoption advocacy people to stand in their shoes and take on these fundamental rights for the children. Going to my second assignment was to get Judge, I apologize, I forgot your name, Your Honor. Me? I'm Judge Harris. Harris. These docket numbers and, of course, the court is free to look at the docket, even if it wasn't put into the JA. But docket number seven is the motion for limited discovery. Number eight or number nine is either eight or nine. Nine is granted in part and denied in part regarding who these fictitious people are. And then there's a text order right afterwards that says I need to serve it on BSS. And then the amended complaint comes after. I would ask and warn the court. Counsel, let me go back so we're sure because somebody's going to have to write this opinion. The district court ruled at JA 117 that you did not allege that the defendants engaged in an action or that the exclusive means of adopting children was a public function. You agree you didn't allege that basis for being a state actor? I believe the court said I didn't sufficiently show it in my briefing, Your Honor. Well, where is it in your complaint? Let me ask it that way. It's not in my complaint, Your Honor. All right, so the district court was probably right on that point. So then that brings us to the other point, which is was there a constitutional duty that was delegated to the defendants? And if I'm reading the district court's order correctly and the answers of counsel, the district court never addressed that allegation. Say the allegation one more time, Your Honor. The allegation in order to show that a defendant can be brought within Section 1983 as a state actor when you have a private party, cases will say that that person can be brought in because there was a constitutional duty from a public authority that was delegated to the private actor and that that can then make them a state actor and that's sufficient. So what I thought your argument was was that you allege that in paragraph 41 of the complaint, but I'm not finding that the district court ever ruled on whether that was sufficiently pled or not. They just didn't address it. They didn't address it, Your Honor. They just went straight for, I think overall in the court's mind was that foster care is not. So that your argument would be is in and of itself an error that the district court didn't address it. Yes, Your Honor. Okay. Yes, Your Honor. A couple of other things. There have been a lot of statements and misstatements of what was in the complaint. And again, there's nothing attached to any of my complaints. And, you know, they keep saying that I attached an adoption decree. It's like, you know, we're in completely different cases. You know, this wiggling around with adoption, adoptive placement versus foster care placement. My child is a foster child by virtue of either emergency protected custody or a court order. And eventually after EPC, we know a court order is going to kick in. It's only extinguished. My kid is only out of foster care as soon as there's another court order, such as the adoption decree, which occurred on October 15, 2015. My child is a foster child from the time she leaves Ohio in April until October 15, 2015. Frederick County sold this child to adoption advocacy to supervisor the placement, to make the placement and to make sure it was safe. And, you know, Deborah Thompson in the Doe case was the exact same person over Doe as these folks were. I mean, it is on all fours. It's the same case. And, you know, when I argued this case in 2009, the counsel for DSS stood in front of the panel when Judge Traxler asked him, you know, is DSS responsible? Even if they know and are watching a child be molested, and DSS said, no, there are no constitutional duties to protect. There are. And they cannot be sold, Your Honor. That's the bottom line with this case. They stepped in their shoes. Any other questions? Thank you very much, counsel. We appreciate the arguments of both counsel. Normally, we would come down and shake hands with counsel in the well of court. But COVID doesn't let us do that now, so we hope you'll come back on another occasion. And with that, I'll ask the clerk to adjourn court until this afternoon. Thank you, Your Honor. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: G. Steven Agee, Pamela A. Harris, Lydia Kay Griggsby